**W. T. COWAN, Inc.,**

v.

**The UNITED STATES.**

No. 49306.

United States Court of Claims.

Jan. 11, 1955.

Dale C. Dillon, Washington, D. C., Ralph E. Curtiss, Washington, D. C., on the brief, for plaintiff.

Bruce G. Sundlun, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff sues for the difference between the amount it has been paid for the carriage of certain ammunition and the amount it says it is entitled to.

From August 12, 1942, through August 6, 1943, plaintiff transported for the Navy numerous shipments of ammunition with explosive bullets for use in a gun known as "20 M/M Automatic Gun A/N–M2," from Elkton, Maryland, to Nixon, New Jersey. Plaintiff described the shipments on the bills of lading as "Ammunition For Small Arms With Explosive Bullet (Loaded 20M/M Shells)" or as "Ammunition for Small Arms With Explosive Bullet (20 M/M H. E. I. AA Complete Rounds)", as published in Middle Atlantic States Motor Carrier Conference, Inc., Freight Tariffs, Series 10, MF–I. C. C., Nos. A–66 and A–106. The rate charged was that applicable to "Ammunition, Explosive, Incendiary or Gas, Smoke or Tear Producing: Ammunition, fixed, N. O. I. for cannon, vol., min. wt. 30,000 lbs."

The applicable tariff is what is known in the record as "Agent Jackson's No. 12," as modified by the tariff mentioned above. This tariff sets out the following with reference to items 23, 25, 28, 29, and 30:

| Item | Articles | Rating |
|---|---|---|
| 23 | Ammunition, Explosive, Incendiary or Gas, Smoke or Tear Producing (See Note 2 below.) | |
| 25 | Ammunition, fixed, N. O. I., for cannon ......................... | D1 |
| | Vol., min. wt. 30,000 lbs......... | 1 |
| | * * * | |
| 28 | Cartridge cases, cartridge shells, cannon, empty, primed | 1 |
| | Vol., min. wt. 30,000 lbs.......... | 3 |
| 29 | Cartridges, cannon, blank...... | 2 |
| | Vol., min. wt. 36,000 lbs......... | 4 |
| 30 | Cartridges, small arm, blank or loaded, in boxes................ | 2 |
| | Vol., min. wt. 30,000 lbs......... | 4–5–4 |

" * * * Note 2.—Subject to Rule 27. * * * "

"D1" in the column headed "Rating" means that for less than truckload ship-

ments the rate is double the first class rate, and the designation "1" after "Ammunition, fixed, N. O. I., for cannon," means the first class rate. This rate would have been applicable except for the fact that the plaintiff participated in Middle Atlantic States Motor Carrier Conference, Inc., tariffs "MF–I. C. C. Nos. A–66 and A–106," which were designated as "exceptions to National Motor Freight Classification No. 6, East." These exceptions provided that the rate applicable for truckload shipments of ammuntion for cannon should be 75 percent of the first class rate. Plaintiff contends that this is the proper rate covering the shipments.

Defendant contends that the applicable rate is contained in item 30 of Agent Jackson's No. 12, which reads: "Cartridges, small arm, blank or loaded, in boxes: Vol., min. wt. 30,000 lbs.," with a rating of "4–5–4." This rating means that such shipments carry the fourth class rate in the eastern territory, the fifth class rate in southern territory, and the fourth class rate in western territory. The above mentioned "Exceptions to National Motor Freight Classification No. 6, East" also provided for a rate of 75 percent of the fourth or fifth class rate on "Cartridges, small arm, blank or loaded, in boxes."

If the plaintiff is correct, the rate in cents would have been 51 cents per hundred pounds, and if the defendant is correct, the rate would have been 34 cents. The difference in dollars is $12,821.23. Defendant, however, admits liability for $217.76 of this amount.

The question presented is the proper classification of ammunition for a 20-mm. antiaircraft gun.

It is conceded that Agent Jackson's No. 12 does not specifically set out what constituted "Ammunition, fixed, N. O. I. for cannon," or "Cartridges, small arm, blank or loaded, in boxes." However, Supplement 1 of Agent Jackson's No. 12, effective April 20, 1942, did contain a rate for the shipment of cannons and described a cannon as follows: "Guns, N. O. I. (cannon, howitzers or mortars), bore under 6 inches but not less than ¾ inch, not mounted, including equipment of mounts, other than wheeled." "Vol., min. wt. 30,000 lbs."

Twenty millimeters equal .787 inches; hence, a cannon of that caliber comes within the definition of a cannon as contained in Supplement 1 of Agent Jackson's No. 12. If a 20-millimeter gun is a cannon, and not a small arm, then it necessarily follows that the ammunition for a 20-millimeter gun is "Ammunition, fixed, N. O. I. for cannon."

The General Accounting Office has ruled that ammunition for a 20-millimeter gun was ammunition for a cannon on at least two occasions: in a letter to the Traffic Manager of the M & M Transportation Company (plaintiff's exhibit No. 7), and in a letter to Davidson Transfer and Storage Company (plaintiff's exhibit No. 6).

The Interstate Commerce Commission so ruled in Docket I. & S. M–2586, introduced in this case as plaintiff's exhibit No. 8. In this report it was said:

"Prior to April 20, 1942, the national classification, under the general heading of 'Ordnance', provided ratings on 'guns, n. o. i. (cannon, howitzers or mortars) bore under 6 inches, but not less than 1 inch, mounted on mounts'. Effective on that date, the item containing the ratings was amended by providing that the bore of the guns described should be under 6 inches but not less than ¾ inch.

\* \* \* \* \* \*

"Since the reduction in the minimum bore, in the 'cannon, etc.', description, shipments of 20-millimeter guns have been billed as 'cannon'. As the 20-millimeter gun clearly is a cannon, the ammunition therefore is cannon ammunition, and the present ratings for 'Ammunition, fixed for cannon', referred to hereinbefore, apply thereon. \* \* \* "

Prior to 1941 the smallest cannon manufactured in this country had a caliber of 37 millimeters, but in 1941

the Navy Department began the manufacture of the Hispano-Suiza aircraft cannon, Birkigt design, which was a 20-millimeter cannon. The Navy Department in a book called "The Machine Gun," in chapter 14 of part V, described such a gun as a cannon.

"Technical Manual 9–1900" issued by the War Department under date of July 3, 1942, describes small arms ammunition as follows:

"Small arms ammunition comprises the ammunition used in small-arm weapons—rifles, pistols, revolvers, and machine guns in calibers .22, .30, .45, and .50, and shotguns of 12-gage."

All of the above are smaller than the caliber of the 20 M/M gun. It defined ammunition for cannon as follows: "The term 'artillery ammunition' includes ammunition used in cannon of all calibers."

Therefore, there seems to be no doubt that a 20-millimeter gun was not only described in the applicable tariff as a cannon, but that it has been so regarded by the General Accounting Office and by the Army and Navy since 1941, which was prior to the shipments in controversy.

If the 20-millimeter gun is a cannon, then it necessarily follows, as the Interstate Commerce Commission has ruled, that ammunition for this gun is ammunition for a cannon, and, therefore, comes within item 25 of Agent Jackson's No. 12, to wit: "Ammunition, fixed, N. O. I., for cannon."

If it does, then 75 per cent of the first class rate is applicable, by reason of the "Exceptions to National Motor Freight Classification No. 6, East."

It is somewhat persuasive that Agent Jackson on June 25, 1943, issued Supplement No. 18 to Agent Jackson's No. 12, effective August 7, 1943. This supplement provided that the ratings applicable to "Cartridges, small arm, blank or loaded, in boxes" would apply only on "Cartridges, 50-caliber (½ inch) or smaller, and on shotgun shells." Two

shipments were made after the issuance of this supplement No. 18, and defendant concedes that plaintiff is entitled to recover for them the sum of $217.76.

Defendant's chief reliance is upon the fact that Agent Jackson's No. 12 relative to item 23, "Ammunition, Explosive, Incendiary or Gas, Smoke or Tear Producing," referred to Note 2, which stated that the shipment of such articles was "subject to rule 27." Rule 27 reads:

"Requirements for movement of explosives and dangerous articles other than explosives shall be governed by the Rules and Regulations as prescribed in Motor Carriers' Explosives and Dangerous Articles Tariff No. 4, Agent C. F. Jackson's MF–I. C. C. No. 11, I. C. C. No. 11, supplements thereto and reissues thereof."

This Motor Carriers' Explosive and Dangerous Articles Tariff No. 4 set out rules for the packaging and marking of such articles, and defined ammunition for cannon as " * * * all fixed or separate loading ammunition of 37-mm (1½ inches) caliber and larger which is fired from a cannon, gun, or mortar, as distinguished from ammunition fired from a device such as a pistol, revolver, rifle, shot gun, or similar firearm."

Defendant says that this definition of ammunition for cannon contained in this tariff should be read into the tariff known as Agent Jackson's No. 12. We do not think this follows. This tariff had nothing to do with rates for the carriage of ammunition; it was concerned only with the packaging and marking of it, and there is nothing to indicate that it was promulgated for the purpose of fixing rates for the carriage of ammunition.

We called attention above to the fact that the smallest cannon manufactured in this country prior to 1941 was of a caliber of 37 millimeters. Motor Carriers' Explosive and Dangerous Articles Tariff No. 4, which was issued December 20, 1941, was evidently promulgated

with that fact in mind. On the other hand, Supplement No. 1 to Agent Jackson's No. 12 became effective April 20, 1942. It seems clear that when the "Explosive and Dangerous Articles" tariff was issued, it could not have been contemplated that a later tariff would classify a 20-millimeter gun as a cannon. At any rate, this tariff has to do only with packaging and marking, and has nothing to do with rates. The rates are set out in Supplement No. 1 of Agent Jackson's No. 12, and they clearly define a 20-millimeter gun as a cannon and, therefore, the ammunition used by this gun must be cannon ammunition.

It results that plaintiff is entitled to recover the sum of $12,821.23. Judgment for this amount will be entered.

JONES, Chief Judge, and LARAMORE, MADDEN, and LITTLETON, Judges, concur.